In the Matter of the Estate of MARTHA PENO, Late of Churubusco, Clinton County, New York, Deceased.

Surrogate's Court, Clinton County, February 16, 1927.

**Surrogate's Court — discovery proceeding under Surrogate's Court Act, §§ 205, 206 — Surrogate's Court Act, § 40, now gives surrogate jurisdiction in discovery proceedings to determine title to property described in instruments under seal — decedent's daughters claim title to bond and mortgage and furniture by virtue of assignment and bill of sale executed by decedent and title to bank book based on change of account — instruments recite decedent reserved right to full use and control of property during her lifetime — evidence does not show delivery of property — transaction cannot be sustained as gift inter vivos or causa mortis — no presumption, under Banking Law, of gift of bank account — instruments are testamentary in character and are void as not being executed in compliance with Decedent Estate Law, § 21 — title to property does not vest in daughters under any agreement of decedent to pay them for supporting her — transfer is not valid declaration of trust — title to property is in decedent's estate and should be delivered to representatives thereof.**

Section 40 of the Surrogate's Court Act now gives the Surrogate's Court equitable jurisdiction in discovery proceedings under sections 205 and 206 of the Surrogate's Court Act to determine title to property described in instruments under seal, such as assignments of mortgages, general releases and the like, provided only that the property is such as is described in said sections 205 and 206.

In this proceeding under sections 205 and 206 of the Surrogate's Court Act by representatives of the decedent's estate to discover property alleged to be in the possession of decedent's daughters, a bank book, furniture, and a bond and mortgage which said daughters concede are in their possession must be returned to decedent's estate. The daughters cannot retain possession of the property on the theory of a gift *inter vivos*, for the assignment of the bond and mortgage and the bill of sale transferring the furniture contained a reservation of title in decedent until her death, and the bank book was never delivered into the possession of either of the daughters.

The bank account which was changed at the direction of the decedent so as to read, " In case of death payable to " her two daughters was not in such form as to create any presumption of an intention, under the Banking Law, to give the same to the daughters.

The property cannot be retained by the daughters on the theory of a gift *causa mortis*, for there is no evidence to show that at the time the gift was made the decedent was in ill health or anticipated death within a short time.

The daughters of the decedent cannot claim title to the mortgage by virtue of the assignment thereof or to the furniture by virtue of a bill of sale, since both instruments reserved title in the decedent until death and were, therefore, testamentary in character, and not having been executed in the form required for the execution of a will, under section 21 of the Decedent Estate Law, are void.

Moreover, the claim of said daughters to the property on the ground that the dealings of the parties constituted a contract between decedent and them by which decedent gave her property in payment for her care and maintenance up to the time of her decease cannot be sustained in the absence of evidence of any such agreement either express or implied that decedent would pay for such privilege.

Nor can the attempted transfer of the property be upheld as a valid declaration of trust, for there is nothing to show any intention to create a trust; moreover, the reservation of title in decedent negatives the idea that she intended to turn over the property to herself as trustee for the benefit of her daughters.

In the event that the amount due on the bond and mortgage which one daughter claims was assigned to her has been paid to said daughter, she is directed to pay over the proceeds therefrom to the estate or a sum equal to the value of such bond and mortgage; a similar direction must be made if the daughter mentioned in the bill of sale has disposed of the personal property recited therein.

PROCEEDING under sections 205 and 206 of the Surrogate's Court Act against Selina Coron and Tina Ashline, for the discovery of certain property alleged to be in their possession and belonging to the estate of decedent.

*Thomas J. Fitzpatrick,* for Paul Peno and Agnes Peno, administrators c. t. a.

*Victor F. Boire,* for Selina Coron and Tina Ashline.

*John E. Judge,* special guardian for Louva Peno and Everett Peno, infants.

HARRINGTON, S. The decedent was an elderly woman and for about eleven years prior to her death had made her home with her daugher, Selina Coron, making frequent short visits to her other

Surrogate's Court, Clinton County, February, 1927.     [Vol. 123

daughter, Tina Ashline. On February 4, 1915, the decedent executed her last will and testament. By this will she bequeathed the sum of fifty dollars together with one-half of her furniture to each of her daughters above mentioned. She bequeathed and devised her residuary estate to her son, Edgar W. Peno. The decedent's husband was dead at the time of the execution of this will and at such time she was making her home with her said son. A short time after the execution of this will the decedent left the home of her son and from that time until her decease, made her home with her daughters as above mentioned. The will was drawn by a layman. The son died in November, 1918.

On September 17, 1925, it appears that the decedent sent for the layman who had previously prepared her will and instructed him as to what she desired done with her property. This layman testified that he drew the papers in question, pursuant to her instructions; that he read them to the decedent and she declared that they were just as she wanted them. The testimony by this witness as to the reason given by decedent for executing these instruments was as follows: " Q. State what conversation you had with her. A. She wanted that this property should be turned over to her daughters because of the fact that after her husband's death she had remained or lived with those two daughters and she wanted this property to be turned over to them. Q. Did she say any more than that? A. That they had taken care of her and she had made her home with them. * * * Q. Did she say anything as to why she wanted them to have it? A. No more that I recall, only as I have stated that she wanted it turned over to them for that reason — she had made her home with them — they had cared for her."

The instruments so executed by the decedent at this time were as follows:

(1) An assignment of a bond and mortgage from the decedent to her daughter, Selina Coron, on the usual assignment of mortgage form. The consideration is expressed as " a good and valuable consideration." The closing paragraph of said assignment is as follows: "A condition of this instrument is that party of the first part retains full use and control of said mortgage during her lifetime."

(2) A bill of sale on the usual bill of sale form from the decedent to her two daughters above mentioned, by which she gave her furniture and household effects in the home of each daughter to each daughter respectively. The consideration expressed is " One Dollar and other good and valuable considerations." The last paragraph of this bill of sale reads as follows: "A condition of the foregoing instrument is that party of the first part retains the use and control of any and all personal property during her natural lifetime."

(3) A letter prepared by said layman and executed by the decedent, addressed to the cashier of the First National Bank of Chateaugay, N. Y., as follows:

" DEAR SIR.— Will you please change my account in your bank book 68 from Martha Peno to Martha Peno or Selina Corro [Coron] and Tina Ashline. Said account to be fully controlled by me during my natural lifetime. At my death same to be equally owned by my two daughters above mentioned."

The assignment of the bond and mortgage was recorded, presumably by Mrs. Coron, in the Clinton county clerk's office on November 7, 1925. The bill of sale was never filed or recorded.

The witness testified that upon the execution of the above instruments, the assignment of mortgage and bill of sale were delivered by the decedent to Mrs. Coron, that the decedent " received the money therefor," meaning, I assume, the one dollar expressed as consideration. The bank book and the above order to the bank were delivered by the decedent to the witness, with instructions to have her bank book changed as mentioned in said order. The witness gave the bank book and the order to his son, who is a bookkeeper in said bank, with instructions to make the change directed. There is no evidence as to who had possession of the bank book from that date to the time of decedent's death. The entry made on the bank book beneath the name of the decedent is as follows: " In case of death payable to Selina Caron [Coron] and Tina Ashline. See authority filed 9/18/25."

The only other witness in the proceeding was Fred Coron, the husband of Selina Coron. He testified that the decedent lived at his home practically all of the time for eleven years prior to her death, and after the death of her husband; that occasionally she visited her other daughter, Mrs. Ashline, but that she spent most of her time at his home. In reply to questions relative to his conversations with the decedent on the matter of her paying for her board, the witnesss testified as follows: "A. Well, she used to tell me that often, that she saved enough money to pay the girls for her keeping. Q. Before the paper was made out, did she ask you to send for Mr. Powers? A. Yes sir. Q. What, if anything, did she tell you she was going to have Mr. Powers do? A. She said she wanted to get Mr. Powers to fix her business and pay the girls — that is all she told me that time."

On the adjourned hearing Mr. Coron testified in regard to his conversation with Mrs. Peno when she first came to live at his home, as follows: " Q. What was said, and between whom? A. She told Mrs. Coron she was going to stay there as long as she wanted to

keep her and she was going to pay her.  It was said in front of me.
*  *  *  Q. I ask you, Mr. Coron, if you ever afterwards heard
Mrs. Martha Peno say anything — or did she ever say anything to
you with reference to paying for her care?  A. Yes sir.  Q. What
did she ever say to you?  A. Well, she told me two years ago that
Mr. LeClaire asked her if she was paying when she came to us and
she told me she said ' I told him I was supposed to pay for my
keeping at the time of my death.'  Q. Did she say anything else
that had been said between them — did she say anything else that
he said?  A. She told me he said 'Alright, Marthy, get good care
and pay the girls well.' "

The question at issue, therefore, is the ownership of the bank
account, the personal property mentioned in the bill of sale and the
bond and mortgage mentioned in the assignment, all of which
were owned by the decedent during her lifetime.

Sections 205 and 206 of the Surrogate's Court Act authorize this
court in a discovery proceeding to determine the title to " money
or other personal property  *  *  *  which belonged to the dece-
dent."  The power of this court in such a proceeding to pass upon
the ownership of the bank account in question would seem to be
apparent.  (*Matter of Fonda*, 206 App. Div. 61; *Matter of Degen-
hardt*, 123 Misc. 762; *Matter of Santourian*, 125 id. 668; *Matter
of Lewis*, 123 id. 115; *Matter of Adler*, 107 id. 574; affd., 191
App. Div. 40.)  But to determine the title to the property mentioned
in the bill of sale and the bond and mortgage mentioned in the
assignment thereof, will necessitate passing upon the legal effect
of these two instruments under seal.  While counsel have appar-
ently assumed this court had jurisdiction in such matter, as no
objection to the same has been made, jurisdiction in this court
cannot be acquired by acquiescence.  (*Matter of Mathewson*, 210
App. Div. 572, 573; *Matter of Mondshain*, 186 id. 528, 529; *Matter
of Kingsley*, 111 Misc. 528, 530.)  Except for such bill of sale and
the assignment of the bond and mortgage, no question would arise
as to the power of this court in this proceeding to pass upon the
ownership of the personal property described in the bill of sale or
the bond and mortgage described in the assignment.  The question
is thus squarely presented of whether in a discovery proceeding,
when the evidence as to the ownership of the property in question
is in the form of instruments under seal, this court can conduct the
trial and make a decree therein, or whether it must dismiss the pro-
ceeding on the ground that it may become necessary to set aside
such instruments and such power does not obtain in this court.

If such power obtains it must be found in section 40 of the Sur-
rogate's Court Act, formerly section 2510 of the Code of Civil

Procedure. This section provides for the general jurisdiction of this court. After the amendment to this section by chapter 443 of the Laws of 1914 and prior to October 1, 1921, while the 2d paragraph of said section granted certain equitable jurisdiction to this court, such equitable jurisdiction was construed as being limited to the matters specifically mentioned in subdivisions 1–8, inclusive, of said section. (*Matter of Van Buren* v. *Estate of Decker*, 204 App. Div. 138, 140, and cases cited.) At such time sections 205 and 206 of the Surrogate's Court Act were the same as now except for the amendment to the latter section in 1924 authorizing this court to impress a trust upon the proceeds of property formerly owned by the decedent, which amendment is not material to this proceeding. Accordingly, the decisions prior to October 1, 1921, held that this court had no power in a discovery proceeding to set aside instruments under seal, such as assignments of mortgages, general releases, etc., because a discovery proceeding was not mentioned in subdivisions 1–8 of section 40. (*Matter of Higgins*, 91 Misc. 387; *Matter of Mondshain, supra.*)

By chapter 439 of the Laws of 1921, section 40 of the Surrogate's Court Act was amended by inserting as part of the 3d paragraph thereof the following: " In addition to and without limitation or restriction on the foregoing powers, each surrogate or surrogate's court shall have power, * * *." The language of this amendment would make it seem evident that the equitable jurisdiction of this court was no longer limited to the matters mentioned in subdivisions 1–8 of said section, but that such equitable jurisdiction obtained in the language of the statute, to " any proceeding " on the return of " any process " of said court. And it has been held that this amendment did overcome the effect of such decisions as *Matter of Mondshain* (*supra*) and *Matter of Holzworth* (166 App. Div. 150; affd., 215 N. Y. 700) and that it did remove the limitation on the equitable powers of this court as construed by the decisions prior to said amendment. (*Matter of Van Buren* v. *Estate of Decker, supra*, 140; *Matter of Haigh*, 125 Misc. 365, 367.) As to the extent of the equitable jurisdiction now possessed by this court, see, also, *Matter of Seaman* (205 App. Div. 681, 686); *Matter of Cook* (244 N. Y. 63, 71, 72). Whether this additional grant of equitable jurisdiction by the 1921 amendment to section 40 is constitutional would seem to be a matter for the appellate courts only to pass upon. (*Matter of Brewster*, 92 Misc. 339, 341; *Matter of Thornburgh*, 72 id. 619.)

Although prior to 1921 this court lacked jurisdiction in such matters above mentioned on a discovery proceeding, it did have jurisdiction to pass on such matters on an accounting proceeding, for the reason that such a proceeding was held to be one of the

Surrogate's Court, Clinton County, February, 1927.       [Vol. 128

eight specific proceedings mentioned under section 40 of said act, and, therefore, the general equitable jurisdiction granted by said section was applicable to such a proceeding. (*Matter of Malcomson,* 188 App. Div. 600; *Matter of Coombs,* 185 id. 312; *Matter of Fox,* 166 id. 718; *Matter of Rennert,* 115 Misc. 762; *Matter of Brady,* 111 id. 492.) The case of *Matter of Schnabel* (136 App. Div. 522; affd., 202 N. Y. 134) is *contra* to the last mentioned cases. In this latter case it was held that the Surrogate's Court had no jurisdiction on an accounting proceeding to pass upon the validity of a bill of sale executed by the decedent to one of the interested parties in that proceeding. However, that case referred to section 2731 of the Code of Civil Procedure, now section 263 of the Surrogate's Court Act, and was decided prior to the amendment to section 2510 of the Code of Civil Procedure, now section 40 of the Surrogate's Court Act, granting equitable jurisdiction to this court. In other words, at the time of that decision what is now section 40 of the Surrogate's Court Act contained no authorization for equitable jurisdiction by this court. For this reason it would seem clear that this decision is not in conflict with the last above-mentioned decisions.

As the equitable jurisdiction of this court is no longer limited to the matters mentioned in subdivisions 1–8 of section 40, the reason previously assigned for not allowing such equitable jurisdiction to be exercised in a discovery proceeding should no longer be applicable. I believe this court now has at least the same equitable jurisdiction in a discovery proceeding that it formerly had in an accounting proceeding to pass upon the matters here in question, provided only that the property is such as is described in sections 205 and 206 of the Surrogate's Court Act. Also, that such jurisdiction exists, regardless of the theory advanced for asserting title to the property in question, whether by gift, purchase, etc., and regardless of the evidence offered in support of such title, whether by oral testimony, documentary evidence, or both. To hold otherwise is to make the jurisdiction of this court in a discovery proceeding dependent upon the nature of the evidence offered in support of the title to the property in question. Until the appellate courts define the limitations to be placed upon the equitable jurisdiction of this court as conferred by section 40 of the Surrogate's Court Act, I believe this court should accept and exercise such jurisdiction without reluctance and that it should not, as was stated in *Matter of Coombs (supra),* " fashion reasons for thwarting the manifest policy " of the statute.

It would seem proper in a discovery proceeding to refer to section 40 of the Surrogate's Court Act in order to determine the extent of

this court's jurisdiction over the matters that may arise in such a proceeding. (*Matter of Booth*, 215 App. Div. 516.) That was a discovery proceeding to compel the delivery of certain bonds and to set aside certain instruments under which the respondent asserted title to the same. The nature of the instruments does not appear. The proceeding was dismissed by the surrogate on the ground that the Surrogate's Court was without jurisdiction to hear and determine the matter, presumably on the authority of *Matter of Mondshain* (*supra*). The court referred to the amendment to section 40 of the Surrogate's Court Act by chapter 439 of the Laws of 1921, and stated that such amendment was not in force at the time of the decision in *Matter of Mondshain* (*supra*). While the opinion does not go into detail with reference to the effect of said amendment upon the equitable jurisdiction of the Surrogate's Court in a discovery proceeding, as a rehearing of the matter was directed, it must be assumed that the court was of the opinion that the Surrogate's Court did have jurisdiction in the matter by reason of the general equitable jurisdiction granted to the Surrogate's Court by section 40 of the Surrogate's Court Act.

In *Matter of Hyams* (237 N. Y. 211) appears the statement that section 40 does not enlarge the powers of the Surrogate's Court with respect to discovery proceedings. However, a careful reading of the decision in that case will indicate that such statement should not be taken as a blanket prohibition against referring to section 40 for the purpose of determining the question of equitable jurisdiction of this court in a discovery proceeding. That was a discovery proceeding. The property in question consisted of certain bonds formerly owned by the decedent, and other securities which had been purchased with the proceeds of securities formerly owned by the decedent. The property was claimed by the respondent as a gift from the decedent during his lifetime. The court held that the Surrogate's Court had no power to pass upon the title to the securities which had been purchased from the proceeds arising from the sale of other securities owned by the decedent during his lifetime, for the reason that sections 205 and 206 of the Surrogate's Court Act limited the inquiry to personal property owned by the decedent during his lifetime. The petitioner asserted the authority of the Surrogate's Court to act in the matter, pursuant to section 40 of the Surrogate's Court Act. In reply to this assertion, the court (at p. 217 of the opinion) states as follows: " Section 40 does not enlarge the powers of the Surrogate's Court in so far as the same relate to a discovery under sections 205 and 206. These sections point out specifically what must be done to obtain the discovery. An inquiry may be had concerning specific personal property. The inquiry is

in terms limited to specific personal property which was owned by the decedent in his lifetime, and before a decree can be entered under section 206, it must appear that the petitioner is entitled to the possession of the specific property withheld. No decree can be entered directing the disposition of other property or proceeds derived from property in case a sale has been made."

While the first sentence of the above-quoted paragraph would seem to indicate that it was improper in any case to refer to section 40 in order to determine the extent of this court's jurisdiction in a discovery proceeding, I believe it must be apparent from the remainder of the above-quoted paragraph that the first sentence thereof had reference only to the impropriety of referring to section 40 for the purpose of attempting to find authority for the Surrogate's Court to pass upon property of a different kind than is specifically mentioned in sections 205 and 206; that said first sentence was not intended as holding that reference to section 40 could not be made in a discovery proceeding for the purpose of determining the equitable jurisdiction of the Surrogate's Court in such a proceeding, when the property in question was of the kind specifically mentioned in sections 205 and 206, as is the property in the case at bar. While not material in this proceeding, it is of interest to note that since the decision in the above case, sections 205 and 206 were amended by chapter 100 of the Laws of 1924. Such amendment now authorizes this court in a discovery proceeding, if it shall have found that personal property of the decedent has been diverted or disposed of, to direct payment of the proceeds or value of such property, or impress a trust upon such proceeds. Such a decree was made in *Matter of Malone* (128 Misc. 288).

I am, therefore, convinced that this court has jurisdiction to pass upon the matters here in question.

Did decedent effectually transfer to the respondents her bank account, furniture, bond and mortgage by the execution of the documents here in question, and if so, upon what legal principle is the transfer valid?

Counsel for the respondents does not urge in his brief submitted the validity of the transfer as a gift *inter vivos* or *causa mortis*, but contends that respondents' claim of title to this property should be upheld on the ground that the dealings of the parties established a contract between them with reference to the payment to the respondents by the decedent for her care, and that the property in question was given by the decedent to the respondents and accepted by them as payment for such care and maintenance. If this theory fails, it is urged that the transaction should be upheld as a valid trust for the benefit of respondents. In this connection it is

important to note that counsel for the respondents has elected to place both of them in the same position with respect to their claim to this property, on the theory that the same was given them by the decedent and accepted by them in fulfillment of an agreement with the decedent to pay them for her care and maintenance. There is no evidence of any agreement, either express or implied, between the decedent and the respondent Mrs. Ashline, in regard to the decedent living with her and agreeing to pay her for such privilege.   On the contrary, the only witness on this matter, Mr. Coron, the husband of one of the respondents, testified that decedent made her home for the past eleven years at his house and that only occasionally did she visit Mrs. Ashline.   I know of no rule of law that implies a promise on the part of a mother to pay her daughter for her care and maintenance when visiting her occasionally, whether such daughter be married or single.   The fact that the decedent stated at the time of the execution of the papers here in question that she wanted the property turned over to her daughters, as she had made her home with them, and her further statement to Mr. LeClaire that she was to pay the girls when she died, are not sufficient to establish an agreement on the part of the decedent to pay Mrs. Ashline for her care and maintenance, when the evidence shows that the decedent visited Mrs. Ashline only occasionally.   There is no evidence that even the above statements of the decedent were communicated to Mrs. Ashline and that she relied upon them.   In each instrument the decedent reserved the right to the full use and control during her lifetime of the property in question, and not merely the income thereof.   There is no evidence that the bank book or the bond and mortgage were ever delivered by the decedent to the respondents either personally or by someone at decedent's direction.   Because of the family relationship existing between the parties, the possession of the bank book and the bond and mortgage by the respondents proves nothing in derogation of the ownership thereof by the decedent.   (*Matter of Canfield,* 176 App. Div. 554, 557; *Gaines* v. *Huyler,* 113 Misc. 188, 192; affd., 206 App. Div. 777; affd., 239 N. Y. 611.)   The failure to show a delivery of these instruments in connection with the express reservation for the life use and control of the property mentioned is indicative of an intent on the part of the decedent not to part with the title to such property at that time.   On cross-examination, Mrs. Coron's husband testified that he considered decedent indebted to him for her care and maintenance.   This is difficult to understand if we are to sanction the theory advanced by respondents that the transaction in question constituted a payment to them for decedent's care and maintenance.   Whether

the evidence is sufficient to establish an agreement on the part of the decedent to pay Mrs. Coron for her support and maintenance is not a matter to be determined in this proceeding. Such a claim should be presented and determined pursuant to the statute regulating the method of presenting claims against an estate. All that can be determined on this phase of the matter in this proceeding is whether or not what occurred on the execution of the documents here in question was intended by decedent to constitute a payment by her of any indebtedness to the respondents, so as to divest her of the title to the property described. It is clear that Mrs. Ashline's claim of title to the property in question on the theory of a contract cannot, therefore, be upheld. Counsel for respondents has chosen to place Mrs. Coron in the same situation as Mrs. Ashline on this phase of the matter. All of these matters considered together indicate that this transaction was not intended to and did not constitute a contract between the decedent and the respondents, by which the decedent gave her property to the respondents in payment for her care and maintenance to that time or for her care and maintenance by the respondents to the time of her decease. (See *Matter of Van Alstyne*, 207 N. Y. 298, 306, and *Ten Eyck* v. *Witbeck*, 135 id. 40, 44, 45, where similar transactions were held insufficient to constitute a contract.) The consideration expressed in the bill of sale and assignment of mortgage is not alone sufficient to make the respondents purchasers for value. (*Ten Eyck* v. *Witbeck, supra; Butler* v. *Sherwood,* 196 App. Div. 603, 606, 607; affd., 233 N. Y. 655.)

Nor can this attempted transfer of property be upheld as a valid declaration of trust. In *Brown* v. *Spohr* (180 N. Y. 201, 209) the essential elements of a valid trust of personal property are stated as follows: (1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee. In *Beaver* v. *Beaver* (117 N. Y. 421, 428) the court held that to constitute a trust there must be either an explicit declaration of trust or circumstances which show beyond reasonable doubt that a trust was intended to be created. Also, in *Wadd* v. *Hazelton* (137 N. Y. 215, 220) the court held that an intended absolute gift by way of a written assignment which cannot take effect because of the absence of delivery, ought not to be enforced as a declaration of trust when there is no such declaration and when there is no evidence from which an intention to create a trust can be implied. To th

same effect see *Farmers' L. & T. Co.* v. *Winthrop* (238 N. Y. 477, 487).

In the case at bar it is clear that an explicit declaration of trust does not exist. I believe it should be equally apparent that the circumstances are such that an intention to create a trust cannot be implied. In regard to the bank account, only the decedent had a right to use any of it during her life and she could use all of it if she so desired, or withdraw it and redeposit it in another bank to the credit of any one. In the case at bar the presumption against an intent to create a trust with respect to the bank account is much stronger than obtained in *Beaver* v. *Beaver* (*supra*) where the court held that no intent to create a trust could be implied. The reservation in the bill of sale and the assignment of the bond and mortgage herein is substantially the same as in the letter of instruction to the bank with regard to changing the form of decedent's bank account. It must, therefore, be assumed that the intention of the decedent was the same in all three cases, namely, that she did not intend to part with title to any of this property during her lifetime, and that meantime she was privileged to use all of it if she so desired. Such reservation negatives the idea that the decedent intended to turn over this property to herself as trustee for the benefit of the respondents.

Can title in the respondents to the property in question be sustained on the theory that the same was given to them by the decedent during her lifetime? The elements necessary to constitute a valid gift have been stated by the court many times. There must be an intent to make an immediate gift, a delivery of the thing given and an acceptance of the gift. (*Matter of Van Alstyne, supra,* 306; *Matter of Fonda,* 206 App. Div. 61, 62.) Furthermore, an absolute gift requires a renunciation by the donor and an acquisition by the donee of the interest in and title to the subject of the gift. (*Matter of Van Alstyne, supra,* 308; *Matter of Humphrey,* 191 App. Div. 291, 293, and cases cited; *Peoples Trust Co.* v. *Dickson,* 126 Misc. 580, 582.)

In the case at bar two of the necessary elements to constitute a valid gift are lacking, namely, an intent to give and a delivery of the thing to be given. The terms of the instruments indicate that decedent had no intent to part with her title to the property in question during her life, for she reserves full use and control of the same during her life and not merely the income thereon, as was done in many cases of record where the transaction was upheld as a valid gift. The bank account was not in such form as to create any presumption of an intention to give the same to respondents. (Banking Law, §§ 148, 198, 249; *Matter of Fonda, supra,* 63.) No

Surrogate's Court, Clinton County, February, 1927.     [Vol. 128

one but the decedent could withdraw funds from this account. No one but the decedent could have satisfied the payment of the bond and mortgage during her lifetime, and if so satisfied, there was nothing to prevent decedent from using the proceeds thereof as she desired. As heretofore stated, it must be presumed that the intention of the decedent by the reservation in the bill of sale and the assignment of the bond and mortgage was the same as that used by her in the letter of instruction to the bank in regard to her bank account, and being so, no intent can be implied to make an immediate gift of any of this property. There is no evidence of a delivery of the bank book or of the bond and mortgage by the decedent to the respondents. The assignment of the bond and mortgage was delivered to the respondent Mrs. Coron, but no mention was made of the delivery to her or to any one of the bond and mortgage. There is nothing to indicate what became of the decedent's bank book after it was delivered to the layman for the purpose of having the bank make the proper entry thereon pursuant to her letter of instruction to it. The bank book and the bond and mortgage next appeared in the possession of the respondents in this proceeding.

The family relationship of the parties is such that it must be assumed that respondents had access to the decedent's papers. Because of this, as heretofore stated, the possession of these documents by the respondents proves nothing in derogation of the ownership thereof by the decedent. (*Matter of Canfield, supra; Gaines* v. *Huyler, supra.*) Especially in regard to the bank account of the decedent, the case of *Matter of Fonda (supra)* would seem to be directly in point as authority that no gift of the same was intended or was consummated by the transaction in question. While the bill of sale might under some circumstances be upheld as a symbolical delivery of the articles therein mentioned, I do not believe it can be so upheld in this instance. It was executed as part of the same transaction with the other documents here in question. It contains the same reservation of full control and use by the decedent during her lifetime of the property therein mentioned as was used in the other instruments. Hence, even if we regard it as a sufficient delivery of the property therein mentioned, the terms of the same, in connection with the same terms in the other instruments, negative the idea of an intent to make an immediate gift, which is as necessary to constitute a valid gift as is delivery of the thing to be given. A gift *inter vivos* cannot be made to take effect in possession *in futuro*, as such a transaction amounts only to a promise to make a gift. (*Young* v. *Young*, 80 N. Y. 422, 435, 436; *Butler* v. *Sherwood supra*, 606.) In the latter case a power of revocation was reserved in the document there in question and

the court held that a valid gift had not been perfected. It would seem that the power to extinguish the subject of the gift by the use thereof by the donor, as existed in the case at bar, is equivalent to the power to revoke. In either event, the donor takes from the would-be donees what they would otherwise receive. I believe there was not such a revocation of dominion and control over the property here in question as is required to make a valid gift *inter vivos*. There is no evidence to indicate that decedent at the time of the execution of these papers was in such ill-health as to make death seem imminent. In fact, the evidence shows that she was in her usual health. For this reason, in connection with the failure to establish an intent to give and a delivery of the thing to be given, as above mentioned, the transaction cannot be sustained as a gift *causa mortis*. (*Ridden* v. *Thrall*, 125 N. Y. 572, 579.) Ownership by the respondents of any of the property in question cannot be sustained as a valid gift to them by the decedent during her lifetime. I believe the decedent endeavored to accomplish by the execution of these instruments what the law requires to be done by a will; that the instruments are testamentary in character and not in compliance with the statutory requirements of a will, and are, therefore, void. (Decedent Estate Law, § 21; *Butler* v. *Sherwood, supra.*)

I, therefore, determine that the title to the bank book and the deposits evidenced thereby, the bond and mortgage and the property mentioned in the bill of sale are in decedent's estate; that said bank book, bond and mortgage and the property mentioned in the bill of sale should be delivered to the petitioner herein as the representative of decedent's estate. In the event that the amount due on said bond and mortgage has been paid to Selina Coron, the assignee in the assignment of said bond and mortgage, then said respondent is directed to pay over the proceeds therefrom to the petitioner herein, or a sum equal to the value of such bond and mortgage. A similar direction shall apply in the event that the respondents have disposed of the personal property mentioned in the bill of sale.

The First National Bank of Chateaugay, N. Y., was not made a party to this proceeding. No decree can, therefore, be made in this proceeding containing directions to this bank with reference to the deposits represented by this bank book. (Surrogate's Court Act, § 40.) Even though this bank had been made a party to this proceeding, it would seem that the power of this court is limited to determining the ownership of the bank account, and cannot direct the bank with reference to the payment of the deposits represented thereby. (*Matter of White,* 119 App. Div. 140.) However, service

upon this bank of a certified copy of the decree herein directed will undoubtedly suffice to permit the petitioner to receive the deposits represented by this bank book, as the owner of a bank book is entitled to withdraw the deposits represented by the same upon giving the bank satisfactory proof of said ownership. (*Ridden* v. *Thrall, supra,* 578.) Furthermore, rule 14 as printed in said bank book permits the withdrawal of the deposits represented therein by the petitioner's legal representative.

Costs will be allowed to the petitioner, payable out of the estate. Prepare decree accordingly.