KENNETH B. SCHLEY, as Ancillary Executor under the Last Will and Testament of GRANT B. SCHLEY, Deceased, Plaintiff, *v.* PHILIP E. DONLIN, as Executor under the Last Will and Testament of MARY ANN MCGRATH, Deceased, and Others, Defendants.

Supreme Court, New York County, December 8, 1927.

**Surrogate's Court — jurisdiction — action to determine validity of and enforce rights arising from contract to dispose of estate by will — Surrogate's Court Act, § 40, gives jurisdiction.**

Under section 40 of the Surrogate's Court Act the Surrogate's Court has jurisdiction, upon an accounting, to determine the validity of and to enforce the rights arising from a contract to make disposition by will of decedent's estate. The granting of such powers of equitable jurisdiction to the Surrogate's Court does not oust or impair the general equitable jurisdiction of the Supreme Court over issues of the character involved in this action.

MOTION by plaintiff for judgment on the pleadings, under section 476 of the Civil Practice Act and rule 112 of the Rules of Civil Practice.

*Simpson, Thacher & Bartlett,* for the plaintiff.

*Philip F. Donlin,* for the defendant Donlin.

*Peck & Hancock,* for the defendant Home for Aged.

TOWNLEY, J. Plaintiff moves for judgment on the pleadings under section 476 of the Civil Practice Act and rule 112 of the Rules of Civil Practice. At the outset the answering defendants urge that this court should decline jurisdiction of this suit and relegate the parties to the Surrogate's Court of the county of New York, where full and adequate relief can be had and obtained. Such defendants further urge that, should this court retain jurisdiction, the answers as served raise issues which should be determined only after trial. The jurisdictional question will be first considered.

The facts disclosed by the pleadings, briefly, are as follows:

On October 20, 1913, Mary Ann McGrath made a written contract with one Grant B. Schley, which recited that Grant B. Schley had bought for her account 100 shares of American Tobacco stock, and had paid certain of his own moneys on account of the purchase price, with the object that Mary Ann McGrath should receive the dividends accruing on such stock during her lifetime, and in consideration of such payments so made by Grant B. Schley she agreed in said contract that her last will and testament should provide for three specific legacies, aggregating $1,600, and should devise and bequeath the entire residue of her estate, both real and personal, to said Grant B. Schley and to his heirs and assigns. On the same day, namely, October 20, 1913, Mary Ann McGrath executed a testamentary writing, designated as " her last will and testament; " said will making bequests of the agreed three specific legacies aggregating $1,600, and devising and bequeathing her entire residuary estate to Grant B. Schley and to his heirs and assigns. Grant B. Schley died a resident of New Jersey prior to December, 1917, leaving a will, and letters testamentary were issued in New Jersey to Kenneth B. Schley, the plaintiff in this action.

On April 27, 1918, ancillary letters were issued to plaintiff by the Surrogate's Court of New York county, and this action is brought by plaintiff as such ancillary executor. Mary Ann McGrath died a resident of New York county on July 23, 1926, and prior to her death had made a second and later will, dated May 6, 1922.

14

By the provisions of this later will testatrix made a different disposition of her property and estate, and therein left nothing whatever to Grant B. Schley. This later will of May 6, 1922, was duly admitted to probate in the Surrogate's Court of New York county on October 6, 1926, and letters testamentary thereunder were issued on October 7, 1926, to the defendant Philip E. Donlin, as executor. Donlin is still acting as such executor, and has collected the property and assets of the McGrath estate.

In this suit the plaintiff, as such ancillary executor of Grant B. Schley, has joined as defendants said Philip E. Donlin, as executor under said last will of Mary Ann McGrath, and also all the legatees named in the later Mary Ann McGrath will of May 6, 1922. The contract of October 20, 1913, and both the earlier and later wills of Mary Ann McGrath are annexed to the complaint. In addition to the above facts, the plaintiff, as such ancillary executor, by his complaint claims to be entitled to receive the entire property and estate of Mary Ann McGrath, and alleges that the defendant Philip E. Donlin, as executor of Mary Ann McGrath, after demand has refused to pay over and deliver to plaintiff the property and assets of her estate now in his possession and control.

The complaint further alleges that plaintiff has no adequate remedy at law and by paragraph XII, " on information and belief that the plaintiff cannot obtain a full determination of the matters here involved in the Surrogate's Court," prays judgment as follows: (1) That it be ad judged and decreed that Donlin, as such executor, holds the entire estate of Mary Ann McGrath for the benefit of plaintiff; (2) for an accounting between Donlin, as executor, and the plaintiff, as such ancillary executor; (3) that Donlin, as executor, be required to pay over all the property and assets of the McGrath estate to plaintiff, after deduction of reasonable and proper administration expenses; (4) that Donlin, as executor, be enjoined during the pendency of this suit from disposing of any of the McGrath property or estate; and (5) that the legatees named in the later McGrath will of May 6, 1922, be forever barred from any right or interest in the McGrath estate.

Two of the defendants, Philip E. Donlin, as executor, and St. Joseph's Home for the Aged (one of the legatees in the later will of May 6, 1922), have answered; the other legatees named as defendants herein have all appeared, and have defaulted in pleading. The answers served, among other things, deny on information and belief that the plaintiff cannot obtain full relief in the Surrogate's Court of New York county, and demand judgment " that the plaintiff be relegated to the Surrogate's Court of New York County, which court has jurisdiction of the estate of Mary Ann McGrath and which

court has jurisdiction to try the issues attempted to be raised by the allegations of the complaint herein," and also demand and ask for certain other appropriate and suitable relief.

The Surrogate's Court is of statutory creation, and has only such equitable powers as are conferred upon it by statute as construed by the decisions of the courts. The legislative grant of general jurisdiction to the Surrogate's Court is contained in section 40 of the Surrogates' Court Act, passed in 1914, as a revision of the Code of Civil Procedure in reference to Surrogates' Courts, and amended in 1921 (chap. 439) and 1924 (chap. 100). The general purpose of the Legislature in making such revision of the Code in 1914 was well stated by Surrogate FOLEY in *Matter of Parsons* (121 Misc. 747, 749): " The general purpose of the revision of the Code in reference to Surrogates' Courts made in 1914 (now embodied in the Surrogate's Court Act) was to centralize and unify all proceedings relating to estates in those courts and to put an end to the former practice, resulting in delay and expense in the settlement of estates, when the parties were remitted to other courts to have disputes determined. This purpose is set forth generally in the introduction to section 40 of the Surrogate's Court Act."

The 1921 amendment to section 40 of the Surrogate's Court Act was made by the Legislature with the evident purpose and intent of enlarging the equitable powers and jurisdiction of the Surrogate's Court by adding the following language: " In addition to and without limitation or restriction on the foregoing powers, each surrogate or Surrogate's Court shall have power * * *."

The effect of this amendment was considered by Surrogate HARRINGTON, of Clinton county, in *Matter of Peno* (128 Misc. 718), where he stated: " The language * * * would make it seem evident that the equitable jurisdiction of this court [Surrogate's Court] was no longer limited to the matters mentioned in subdivisions 1–8 of said section [40], but that such * * * jurisdiction obtained in the language of the statute, to ' any proceeding ' on the return of ' any process ' of said court."

The existence of a valid contract to execute a will and the fact that a will was executed pursuant to such contract cannot restrain or prevent a decedent from executing another and a later will changing the disposition of his estate. The testator did not thereby incapacitate himself from making another will, but the claim is that his estate is bound by an antecedent obligation. (See *Edson* v. *Parsons*, 155 N. Y. 555, 564.) In *Morgan* v. *Sanborn* (225 N. Y. 454, 461) the court stated: " It is no objection to the probate of a will that a testator had made a valid contract to dispose of his property in a different manner than that provided in the will, or that

the will offered for probate revokes a will drawn in accordance with the terms of the contract."

In *Matter of Lally* (210 App. Div. 757) it was held that upon proceedings to probate a will the Surrogate's Court possessed no general powers of equitable jurisdiction to determine the validity of a contract to make disposition of estates through mutual wills. In the opinion of the court, however, it was clearly indicated that the appellate court was of the opinion that such questions could be determined and full equitable relief afforded in an accounting proceeding in the Surrogate's Court. The court in its opinion (at p. 759) states: " While the disposition of a decedent's property under a will might in an accounting proceeding be tried by the surrogate and the validity of the alleged agreements determined therein, it cannot be determined on the probate of a will."

And further (at p. 760): " Whatever may be the rights of the contestant on an accounting to impress a trust upon the property passing under the last will, if it be found to be such, the surrogate cannot in this *probate proceeding* entertain and determine what is virtually an action in equity for the specific performance of a contract to make mutual wills." (Italics ours.)

Later decisions have squarely held that section 40 of the Surrogate's Court Act confers sufficient equitable jurisdiction on the Surrogate's Court to determine the validity and enforce the rights resulting from a contract to make disposition of decedent's estate upon an accounting in the Surrogate's Court. Surrogate FOLEY so held in *Matter of Hawes* (119 Misc. 359 [October, 1922]; affd., 212 App. Div. 861), there citing with approval *Matter of Malcomson* (188 App. Div. 600) and *Matter of Aldrich* (194 id. 815); and the same surrogate made the same ruling in *Matter of Sewell* (127 Misc. 202). Surrogate SCHULZ in *Matter of Bunimowitz* (128 Misc. 518) also held that the Surrogate's Court had jurisdiction to determine the validity of an antenuptial agreement releasing dower rights in decedent's estate. To the same effect is *Matter of Frame* (128 Misc. 788). Surrogate HARRINGTON, of Clinton county, in *Matter of Peno* (128 Misc. 718), having under consideration the equitable jurisdiction and powers of a surrogate in a proceeding for a discovery, held that an accounting proceeding was one of the matters specified in subdivisions 1 to 8 of section 40 of the Surrogate's Court Act, and that in an accounting proceeding general equitable jurisdiction has been granted to the Surrogate's Court by the express language of the statute. The broad extent of the present equitable powers of the Surrogate's Court is well illustrated by the recent decision of the Court of Appeals in *Matter of Cook* (244 N. Y. 63), where it was held that an agreement by next of kin not to contest a will upon

receipt of advance payments may be considered by the surrogate and the rights of the parties determined. Judge CRANE, writing the opinion of the court, stated (at pp. 71, 72): " Such agreements are only cognizable in equity; they are enforced by a decree which enjoins or prevents a contracting party from proceeding contrary to the agreement. Equity molds the relief to fit the situation, to compel the party to keep his bargain. *As the Surrogate's Court, under section 40 of the Surrogate's Court Act, now has equity jurisdiction, the surrogate* after hearing the parties and taking the proof, *will determine as would a court of equity* whether these next of kin have any legal or equitable standing in his court." (Italics ours.)

A court of equity enforces the performance of both antenuptial agreements and contracts to dispose of property by will upon the same principle, namely, that the representatives, legatees and devisees of the promisor are considered trustees of a resulting trust for the benefit of the persons or their representatives who, under the agreement, are equitably entitled to decedent's property, and that such trustees are liable to account for and deliver over the property to them. (*Edson* v. *Parsons,* 155 N. Y. 555; *Phalen* v. *United States Trust Co.,* 186 id. 178; *Hermann* v. *Ludwig,* 186 App. Div. 287; affd., 229 N. Y. 544.) In view of the 1921 and 1924 amendments to section 40 of the Surrogate's Court Act, and the later decisions, the ruling in *Matter of Hermann* (178 App. Div. 182, 188; affd., without opinion, 222 N. Y. 564), holding that the Surrogate's Court has no jurisdiction and is without power to determine the validity and enforce the legal and equitable results of a contract to make disposition of promisor's property by will, in my opinion can no longer be approved and followed, and must be disregarded.

It is my opinion that section 40 of the Surrogate's Court Act grants to the Surrogate's Court ample equitable jurisdiction upon an accounting proceeding in that court to determine the validity and enforce the legal and equitable results of a contract to make disposition of decedent's property by will, with jurisdiction and power to compel, if necessary, its performance by the heirs or representatives of a decedent, or give other full and adequate equitable relief. Over such matters in an accounting proceeding, to use the language of Judge CRANE (*Matter of Cook, supra*): " The Surrogate's Court * * * now has equity jurisdiction " to " determine as would a court of equity."

It is true that the granting of such powers of equitable jurisdiction to the Surrogate's Court does not oust or impair the general equitable jurisdiction of the Supreme Court over issues of the character here involved. Nevertheless the rule has been long established

that, if the Surrogate's Court has complete power to safeguard the interests of the parties, the Supreme Court should refuse to act. (*Bankers Surety Co.* v. *Meyer,* 205 N. Y. 219, 224; *Lawrence* v. *Littlefield,* 215 id. 561, 583; *Matter of Runk,* 200 id. 447; *Evans* v. *Appell,* 211 App. Div. 105; affd., no opinion, 240 N. Y. 585; *Matter of Martin,* 128 Misc. 659.) In *Evans* v. *Appell* (211 App. Div. 105) Mr. Justice MARTIN stated (at p. 109): " In the language of Judge WERNER in *Matter of Runk* (200 N. Y. 447, 461), the Surrogate's Court affords a ' simpler and more expeditious method of accounting ' than by an action in the Supreme Court. In addition, the specialization of the work of the Surrogate's Court is of advantage to representatives of estates and beneficiaries in expediting the final determination. The Supreme Court has repeatedly declined, as a matter of discretion, to take jurisdiction of an action for an accounting, ' unless special facts and circumstances are alleged showing that the case is one requiring relief of such a nature that the Surrogate's Court is not competent to grant it, or some reason assigned or facts stated, to show that complete justice cannot be done in that court.' (*Sanders* v. *Soutter,* 126 N. Y. 193. See, also, *Lawrence* v. *Littlefield,* 215 N. Y. 561.)"

It is my opinion that this entire matter should be disposed of in the Surrogate's Court of New York county in an accounting proceeding in that court of the McGrath estate. All the parties and the subject-matter involved are now before that court. One year having elapsed since the appointment of Philip E. Donlin as executor, he can be compelled to account (Surrogate's Court Act, § 258, subd. 1 [a]), by any interested person (Surrogate's Court Act, § 259, subd. 1 [a], and § 314, subd. 10). This suggested procedure will avoid multiplicity of suits and afford an expeditious determination of the issues involved and save considerable expense. While personally I am convinced that the Surrogate's Court has ample equitable jurisdiction to give full and adequate relief to the parties in respect to the issues and matters here involved, I consider that the proper tribunal to determine this question of jurisdiction in the first instance is the learned Surrogate's Court itself.

I have determined to stay all proceedings on the part of the plaintiff until the jurisdictional question has been presented and determined by the Surrogate's Court of New York county, when a further application can be made to this court for final disposition of this action. This disposition renders it unnecessary at this time to consider whether the answers served raise material issues of fact, which require a determination upon trial.

Plaintiff's motion for judgment on the pleadings is disposed of as above indicated, but without costs. Settle order on notice.