In the Matter of the Estate of MAUDE E. VENBLOW, Deceased. FREDERICK SPOLLETT, as Executor of MAUDE E. VEN-BLOW, Deceased, et al., Appellants; IRENE ANDERSON et al., Respondents.

Fourth Department, October 31, 1956.

*John M. Barrett* for executor, appellant.

*Samuel C. Alessi* for William Kent and as special guardian for Linda Lou Kent, an infant, appellants.

*Albert J. Tener* for respondents.

VAUGHAN, J. This proceeding in Surrogate's Court is entitled ''In the Matter of the Petition of Irene Anderson and Raymond Anderson to Compel Specific Performance of Contract and to Compel Payment for Services Rendered upon the Estate of Maude E. Venblow, Deceased.'' The petition is not verified. The record contains no citation or order to show cause. The

petition alleges that on August 9, 1952, decedent " orally offered to the petitioners ", in consideration of their living with her and caring for her for the remainder of her life, to devise and bequeath to them specific property consisting of her home and household furnishings; that they accepted her offer, living with her and caring for her until the date of her death, preparing her meals, providing and paying for all of her food, heat and light, maintaining the house, " and generally providing for all of her physical needs and comfort "; that decedent made two wills carrying out the bargain; but that by her last will and testament she devised the property in issue to her niece and nephew, in violation of the oral agreement. A second claim seeks recovery of the reasonable value of petitioners' services. They pray that the executor be directed to execute a deed in fulfillment of decedent's bargain, or in the alternative that they be paid the reasonable value of their services.

A motion, unsupported by affidavit, was thereafter made to dismiss the first claim on the ground of the Statute of Frauds. The Surrogate's Court, Chautauqua County granted the motion as to the personal property but denied it as to the real property, and the executor and other interested parties appeal.

We must first examine a serious jurisdictional question. We cannot find any satisfactory authority supporting the Surrogate's jurisdiction to entertain a "proceeding for specific performance " of a contract made by a decedent. The Surrogate could undoubtedly determine the questions which have been presented in a proper proceeding (Surrogate's Ct. Act, § 40), but there seems to be no authority for bringing in Surrogate's Court a simple " specific performance proceeding " with no other purpose in view. Apart from the present case, the only case which we have found allowing such a thing to be done is *Matter of Dawkins* (201 Misc. 451), in which the jurisdictional question was neither discussed nor recognized, so that the case is not authority for the propriety of such an unusual procedure but only indicates that on one occasion it was permitted.

It is fundamental that a " surrogate can exercise only such jurisdiction as has been specifically conferred by statute, together with those incidental powers which may be requisite to effectually carry out the jurisdiction actually granted." (*Matter of Martin,* 211 N. Y. 328, 330.) In *Matter of Auditore* (223 App. Div. 654, 659, mod. 249 N. Y. 335) it was stated: " The jurisdiction of the Surrogate's Court is, of course, fixed by statute. It possesses no general, equitable jurisdiction. It does, however, possess jurisdiction ' to try and determine all questions, legal or equitable, arising between any or all of the

parties to any proceeding, * * * as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.' [Citing § 40.] * * * Of course, this language means *only such equitable jurisdiction as may be incidental to the main proceeding of which the surrogate has jurisdiction*. The surrogate would not be authorized to set aside a deed or a mortgage and decree that the property or fund belonged to the estate, because that is a peculiar function of a court of equity. But there is nothing of that sort attempted here.'' (Emphasis supplied.)

In *Matter of Sturmer* (277 App. Div. 503, 509–510) this court stated: '' By section 40 of the Surrogate's Court Act, no specific power is given to the court to adjudicate the ownership or possession of real property *in an independent proceeding for that purpose*. The general equitable powers of the Surrogate's Court come into being *only when the court has before it a proceeding of which it has jurisdiction*. Then it may hear and determine all questions, legal or equitable, to do full and complete justice between the parties. Here, no such proceeding was before the Surrogate. The parties in effect, stipulated that the Surrogate take jurisdiction of an equitable action to set aside a deed. The Surrogate had before him no proceeding to construe the will nor one for final judicial settlement.'' (Emphasis added.) The court then quoted from *Matter of O'Flyn* (174 Misc. 1025, 1028) to the effect that '' whereas in a direct proceeding the jurisdiction of the surrogate does not extend to the adjudication of the title of realty, this jurisdiction does inhere in the course of the determination of issues upon an accounting.'' Two Justices dissenting in the *Sturmer* case, fully agreed that '' the title to the real estate could not be determined in this proceeding '' (p. 511), and while the Court of Appeals reversed (303 N. Y. 98), it was upon entirely different grounds.

In *Feit* v. *Schwartz* (83 N. Y. S. 2d 576, 578) it is stated: '' It is to be noted that no accounting proceedings are presently pending in the Surrogate's Court. It has been repeatedly held that while the surrogate, as an incident to the issues in an accounting proceeding, has complete jurisdiction to determine ownership of real property, and if necessary, to impress a trust thereon, such jurisdiction does not extend to an adjudication of the title to real property in a direct proceeding.''

The 1914 amendment to section 40 of the Surrogate's Court Act, adding the second paragraph thereof, seems to have been construed rather restrictively (see *Matter of Heinze,* 179 App. Div. 453). The 1921 amendment added the third paragraph of

section 40, indicating that the grant of equitable power contained in the second paragraph was not limited to the specific cases enumerated in the following paragraphs. In 1928 the Court of Appeals decided that, ancillary to the trial of a claim against the estate of a deceased partner, the Surrogate could order the winding up of the partnership business and a liquidation of its assets (*Matter of Raymond* v. *Davis*, 248 N. Y. 67, 71, 72). CARDOZO, Ch. J., stated: ''Liquidation may be ordered by a decree of the surrogate as an incident to the allowance or rejection of a claim to share as creditor in the assets of the estate. Only by such relief can there be complete justice between the parties without oppressive expense or harrowing delay. * * * An amendment in 1921 emphasizes the call for a liberal construction. Till then, the general grant of jurisdiction had at times been read as limited by specific grants of jurisdiction as to enumerated subjects [citations]. The amendment gives notice that the powers that are specific shall hereafter be read as being ' in addition to and without limitation or restriction on ' the powers that are general [citations].'' Judge CARDOZO did not say that a direct proceeding could be maintained to wind up the partnership affairs, but that such relief could be had '' as an incident to the allowance or rejection of a claim to share as creditor in the assets of the estate.'' In no other way could the claimant's share of the profits be determined.

It was held in *Matter of Cook* (244 N. Y. 63, 71–72) that the Surrogate's Court may determine the validity and effect of a contract not to contest a will being offered for probate. If such a contract was made and was valid, the contestants would be strangers to the estate and would have no standing in the probate proceeding. CRANE, J., stated: '' As the Surrogate's Court, under section 40 of the Surrogate's Court Act, now has equity jurisdiction, the surrogate after hearing the parties and taking the proof, will determine as would a court of equity whether these next of kin have any legal or equitable standing in his court. The surrogate must always determine on an application to probate a will who are the proper parties to be cited and who are entitled to contest.'' Judge CRANE did not say that a direct proceeding could be maintained to construe the contract and determine its effect, with no other end in view, but that in connection with a pending probate proceeding the same questions could be decided where necessary to determine the contestants' standing to resist probate of the will.

There is no doubt that section 40 of the act contains broad language: '' To administer justice in all matters relating to the

affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding * * * as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.'' If the language of the statute alone were regarded, an argument might be made in support of jurisdiction in this case. The only express limitation is that the dispute relate to the '' affairs '' of a decedent. But as section 40 is read, the nature of the Surrogate's Court must be kept in mind. It is difficult to believe that the Legislature ever intended the court to have direct jurisdiction of every proceeding known to equity — rescission, reformation, foreclosure, injunction, specific performance, bills of peace and to quiet title, equitable accounting, etc. Such a construction of section 40 would work a revolution in surrogates' practice, and the intention to accomplish that result should be expressed in very clear language. The piecemeal trial of '' matters relating to the affairs of decedents,'' in the course of numerous unusual proceedings not known to or regulated by statute, would achieve precisely the opposite result from '' complete justice between the parties without oppressive expense or harrowing delay.'' (*Matter of Raymond* v. *Davis, supra,* p. 71.) It is our opinion that the issues which petitioners seek to raise in this proceeding could and should be determined upon an accounting. In that proceeding the correct distribution of the estate could be determined and decreed. The effect of any equitable doctrine — part performance, fraud, mistake, laches, clean hands, etc.— would be considered. Having jurisdiction of the basic proceeding, the Surrogate would sit as a court of equity, applying equitable principles and adapting the relief to the exigencies of the case. This view was taken of section 40 in *Matter of Lakner* (143 Misc. 117), decided in 1932. The petitioner applied for a citation in an independent proceeding to fix and enforce a lien against real estate held under a testamentary trust. In denying the application, the court stated (p. 118): '' Surrogates' Courts are constitutional courts, but their jurisdiction remains statutory by virtue of the very language of the Constitution itself. (N. Y. Const., art. 6, § 13.) When the Legislature has limited their specific jurisdiction to particular conditions or prescribed a particular way of approach to the court, the law withholds jurisdiction unless such conditions exist or the court is approached in that particular way. [Citation.] Although the specific powers of a Surrogate's Court are in addition to and without limitation or restriction on its general powers (*Matter of Ray-*

*mond* v. *Davis, supra*), the latter can be exercised only upon the return of a process in a proceeding properly brought under some statutory provision therefor and in one of the particular cases authorized by the Legislature to be brought. [Citations.] ' The jurisdiction of the surrogate is the creation of statute. If not conferred upon him it does not exist.' (*People ex rel. Safford* v. *Surrogate's Court*, 229 N. Y. 495, 497.) Section 40 of the Surrogate's Court Act, in unmistakable language, grants to a Surrogate's Court complete power to determine any controversy lawfully before it. The exercise of such power, however, is restricted to cases where the court has jurisdiction. [Citation.] I know of no statute authorizing the petitioner to seek the establishment of such alleged lien in a Surrogate's Court in a separate proceeding therefor, although the subject-matter could be determined in an accounting proceeding.'' * * *

Section 227 of the Surrogate's Court Act, entitled '' Conveyance of real property by executor or administrator to holder of *contract of sale* made by a decedent '', provides: '' Where a decedent dies seized of real property after he has made a *contract for the conveyance thereof* remaining unexecuted at his death * * * *the vendee* * * * may file a petition praying for the confirmation of such conveyance, or * * * for a decree that the same be made and delivered ''. (Emphasis added.) We think that statute is no authority for this proceeding. The alleged contract was not to sell or convey real property, but to make a will, and these petitioners cannot reasonably be considered '' vendees ''. (See our decision in *Matter of Gerhardt*, 261 App. Div. 140, in which we dismissed a petition under § 227 and stated at p. 143: '' While [the Surrogate's Court] has complete power to determine any controversy lawfully before it, it can exercise that power only under some statutory provision therefor, and in one of the particular cases authorized by the Legislature.'')

Warren's Heaton on Surrogates' Courts ([6th ed.], vol. 1, § 36, par. 4, p. 192)˙ considers the effect of the 1921 amendment to section 40 and concludes: '' From the wording of section 40 and the decisions of the courts to which attention has been called it seems obvious, therefore, that certain conditions must exist if the surrogate is to exercise equitable jurisdiction or powers. These are: 1. The proceeding in which the relief is asked must be one of which the surrogate by statute has jurisdiction ''. That is to say, Surrogate's Courts still have only such jurisdiction and powers as the statute confers. It is only when the court has *jurisdiction* that its enlarged equitable *powers* come

into play. Its jurisdiction, however, is confined to the proceedings specifically authorized — administration and probate proceedings, discovery proceedings, judicial settlements, proceedings for the removal of executors, guardianships, construction proceedings, proceedings under section 227, etc. The notion is erroneous that a person having any claim involving the " affairs " of a decedent may simply present a petition to the Surrogate's Court and thereby invoke its jurisdiction in an independent proceeding not authorized by statute; and if such practice were tolerated, the orderly administration of estates would be replaced by needless and expensive multiple litigation.

Thus, with respect to an " independent " proceeding for specific performance, Warren's Heaton states (par. 5, subd. [cc], pp. 212–213) : " The surrogate's court would normally not have jurisdiction of a proceeding brought definitely for the purpose of compelling the specific performance of an agreement. Where, however, specific performance becomes essential in order that the determination made by the surrogate might completely dispose of the proceeding, it would seem that the court would have the necessary jurisdiction. There seem to be no reported cases definitely so holding. However, in a situation that is elsewhere discussed in this paragraph [§ 36, par. 5, subd. (n)], rulings substantially to the effect stated above have been made. These have arisen in connection with contracts to make wills. As is pointed out under that subject heading in this paragraph, *the surrogate cannot hear a direct proceeding for that purpose* nor can he entertain jurisdiction on a probate proceeding. On the other hand, in an accounting proceeding his jurisdiction to render a decision that in effect requires specific performance of such an agreement has been upheld." (Emphasis supplied.) Subdivision (n) of paragraph 5 of section 36 reads (pp. 198–199) : " In some cases a will may be offered for probate which is contrary to the provisions of a valid contract made by the testator during his lifetime under which he should have made a different disposition of his property. Where such a will has been properly executed and no other valid objections appear it must be admitted to probate. [Citations.] The fact that the will is executed in violation of contractual rights is not a valid ground for preventing its admission to probate. This rule applies, however, only on the probate proceeding. Under the present statute it seems quite clear that in an accounting proceeding the surrogate's court has power to determine and enforce the rights arising under a contract to make disposition by a will of decedent's estate. [Citations.] "

The questions which petitioners raise in this "specific performance proceeding" could be determined in an action in equity or in an accounting proceeding in Surrogate's Court (*Schley* v. *Donlin,* 131 Misc. 208; *Matter of McGrath,* 133 Misc. 30; *Matter of Hawes,* 119 Misc. 359, affd. 212 App. Div. 861). In *Schley* v. *Donlin* (*supra,* p. 212), the court stated that " section 40 of the Surrogate's Court Act confers sufficient equitable jurisdiction on the Surrogate's Court to determine the validity and enforce the rights resulting from a contract to make disposition of decedent's estate upon an accounting in the Surrogate's Court." The questions now presented could not be raised in a probate proceeding, for in *Matter of Lally* (210 App. Div. 757, 760), it was held: " Whatever may be the rights of the contestant on an accounting to impress a trust upon the property passing under the last will, if it be found to be such, the surrogate cannot in this probate proceeding entertain and determine what is virtually an action in equity for the specific performance of a contract to make mutual wills." (See, also, *Matter of Higgins,* 148 Misc. 30, affd. 240 App. Div. 860, affd. 264 N. Y. 226.)

No one questions that the Surrogate has broad ancillary equitable powers, so that when once his jurisdiction is properly invoked he can give full relief to the parties according to the exigencies of the case. In an accounting proceeding, the nature and effect of the alleged oral agreement could be determined, and if it were concluded that the real property in issue equitably belonged to these petitioners by reason of the contract, the executor could be directed to distribute it accordingly. But we find no authority for determining those questions in Surrogate's Court in a straight equity proceeding, whether for specific performance or reformation or anything else, simply because a contract was made and one of the parties thereafter died. The Surrogate might as well be asked to foreclose a mortgage or rescind a deed.

The order, so far as appealed from, should be reversed, and the proceeding, so far as it seeks specific performance of the alleged oral contract, dismissed, upon the ground that the Surrogate was without jurisdiction to entertain the proceeding. The disposition herein made is without prejudice to the right of petitioners to file a verified claim for services in *quantum meruit* as they may be advised to do.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Williams and Bastow, JJ.

Order insofar as appealed from reversed on the law, without costs of this appeal to any party and proceeding dismissed, without costs.