In the Matter of the Judicial Settlement of the Account of Guisippina Parascandola, as Administratrix, etc., of Joseph Auditore, Deceased.

Frank Auditore and Another, Appellants; Guisippina Parascandola and Others, Respondents.

Second Department, May 31, 1928.

Executors and administrators — accounting — coadministrator defaulted and was removed — petitioner, in stockholders' representative action, procured judgment in favor of corporation in which coadministrator and intestate were sole stockholders — coadministrator has not paid that judgment — present proceeding seeks to hold said administrator's surety liable for administrator's act in wasting estate, based on converting funds of said corporation — prior representative action not bar to this proceeding — surrogate has jurisdiction, under Surrogate's Court Act, § 40 — amount stolen by coadministrator is subject to claims of creditors of corporation — surety liable only for surplus over amount necessary to pay creditors — surety not required to pay until actual determination of amount due to creditors of corporation.

The petitioner and a brother of the deceased were appointed administrators with the will annexed, but later the brother was removed upon the ground that he had wasted the assets of the estate. It appears that the deceased and the brother, who were the sole owners of the corporation, divided the profits without the formality of dividends. After the death of the decedent, the brother continued to take the money of the corporation for his own purposes. In a stockholders' representative action instituted by the petitioner herein against the brother, the former coadministrator of the deceased, a judgment was rendered holding the brother liable for wasting the funds of the corporation. That judgment has not been paid. The surrogate granted a decree directing the surety to pay one-half of the fund so wasted and that said amount be deposited in a named bank subject to the order of the court.

The former stockholders' action is not a bar to this proceeding, for this proceeding is not inconsistent with that action, but is cumulative, and in fact it was necessary for the petitioner to proceed in the stockholders' action before commencing this proceeding.

The court may treat the funds of the corporation as still in the hands of the brother who defaulted and may determine that one-half thereof belongs to the estate, in view of the fact that the corporation was owned exclusively by the two brothers, and for this purpose the court disregards the corporate form and holds that the estate and the defaulting brother were in effect the corporation and each entitled to one-half the profits.

The contention of the appellants that the surrogate had no jurisdiction is not sustained, for the only equitable jurisdiction the court exercised was authorized by section 40 of the Surrogate's Court Act, and was merely incidental to the main issue, of which the surrogate had jurisdiction.

However, the surety is not liable on the bond of the defaulting administrator except as to the surplus converted by him over and above that necessary to pay the creditors of the corporation, and, therefore, it was error to direct the payment of one-half of the property converted prior to a determination of the

question whether or not there are any existing creditors of the corporation, and, if so, the amount owing to them.

Since it is necessary to determine whether the corporation has creditors and the amount due them in order to determine whether or not there will be any surplus from the amount owing the corporation from the defaulting administrator, the decree is modified by striking out the provision requiring the payment of one-half of the amount converted and directing that said amount be paid to a named bank, and the proceeding is remitted to the surrogate to ascertain the amount of the claims of creditors of the corporation and to determine what surplus, if any, would exist if they had been paid from the funds of the corporation misappropriated by the defaulting administrator, and if it be determined that any such surplus would exist, to enter a decree directing the payment of one-half thereof to the estate.

LAZANSKY, P. J., dissents.

SEPARATE appeals by Frank Auditore and another from a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 18th day of May, 1927.

*Anthony J. Ernest*, for the appellant Frank Auditore.

*James F. Donnelly* [*Mark Eisner* with him on the brief], for the appellant National Surety Company.

*Edward H. Wilson* [*John J. Kean* with him on the brief], for the respondents Guisippina Parascandola, administratrix, and Mechanics Bank, trustee.

*Thomas Cradock Hughes*, special guardian, respondent.

YOUNG, J.   The decedent, Joseph Auditore, died on May 9, 1920, leaving a will which was duly probated.   The executors and trustees appointed by the will renounced, and, on August 18, 1920, letters of administration c. t. a. were issued to Guisippina Auditore and Frank Auditore, and they filed a bond for $500,000 with the National Surety Company as surety.   On June 16, 1925, upon the petition of his coadministratrix, Frank Auditore was removed as administrator upon the ground that he had wasted the assets of the estate in his hands.   The decree for his removal required that the administrators should immediately account.   The administratrix filed her account, but Frank Auditore filed none.   Since her appointment, the administratrix has married and is now the petitioner in this proceeding.

The question involved in this appeal relates to the charge against Frank Auditore for alleged misappropriations of funds and property belonging to the estate.

At the time of the decedent's death he had a fifty per cent stock interest in the Auditore Contracting Company, a New York corporation, and his brother Frank, one of the appellants here, held the other fifty per cent.   From May, 1920, to November, 1923,

Frank was president, treasurer and one of the three directors of the company, and Joseph G. Stockham, who was completely under his control, was secretary and a second director. During this period, Frank completely dominated the affairs of the corporation. In November, 1922, he caused all the assets of the Auditore Contracting Company to be nominally transferred, without any real consideration, to the Auditore Company, Inc., a Delaware corporation of which he held the entire capital stock of ten shares. In October, 1923, he caused all the stevedoring assets then held by the Auditore Company to be again transferred by that company, for a pretended consideration of $1,000, to the Auditore Company, Inc., a New York corporation of which he took all the capital stock. During the above period, he also looted the Auditore Contracting Company and its successor companies. This was determined in an action brought by the administratrix, the petitioner here, as a stockholder, in behalf of the corporation, against him and others to recover the moneys and property of the corporation converted by him. This action resulted in a decision and judgment against Auditore and Stockham in which it was decreed that they return something over $340,000 to the corporation. The judgment also provided for a body execution, and, although they were arrested and incarcerated, nothing has ever been collected.

The surrogate has found that the amount which should be chargeable against Frank Auditore as administrator and against his surety, the National Surety Company, is one-half of the sums diverted from the corporation, which with interest aggregate $416,287.51, and that such one-half, $208,143.75, except for his diversion, would have come to the estate.

The judgment in the Supreme Court action adjudged that the estate was entitled to fifty per cent of the stock interest of the Auditore Company of Delaware, and also of the New York corporation of the same name, and, pursuant to the judgment, stock certificates therefor were delivered to the administratrix.

The decree, entered upon the decision of the surrogate, so far as material upon this appeal, directs Frank Auditore to pay to the administratrix the amount found due by him, and also that the National Surety Company, the surety upon his bond, pay the administratrix the said sum less certain amounts allowed to it for premiums on the bond. It further directs that the sum directed to be paid by Frank Auditore and the surety company be deposited upon its receipt by the administratrix in the National City Bank, People's Trust Branch, subject to the further order of the court.

There is no dispute of fact except on the part of Frank Auditore,

who claims, among other things, that the evidence is insufficient to support the findings against him; but I do not deem it essential to review the evidence in this respect. There is abundant evidence to support the finding that he converted these funds of the corporation, of which he was an officer and a director, and the finding in this respect is the same as that in the Supreme Court action. Of course, there is the question whether this evidence of diversion from the corporation constitutes a conversion of the funds of the estate, but that is not a question of fact, and there is, therefore, involved only questions of law on this appeal.

The theory upon which this case was decided is, in effect, that the corporations which Frank Auditore looted had but two stockholders, the estate and himself; that at the time of the misappropriations he was administrator and represented the estate; that, during the joint lives of Frank and the decedent, they appropriated to themselves, by various irregular devices, funds of the company of which they were the sole stockholders, and, after the decedent's death, Frank continued these practices but retained all the money withdrawn; that while these acts of decedent and Frank in so distributing the funds of the company without a declaration of dividends were illegal, if no rights other than those of the stockholders were affected no one could be heard to complain, and that it was in effect an informal and irregular distribution of assets without any formal dividends. After decedent's death, Frank represented all the stock, holding half in his own right and the other half as administrator, and when he, by any artifice, distributed the assets of the corporation, the distribution was as much to himself in his representative capacity as to himself individually, and that the estate, as the owner of half of the stock, was entitled to receive one-half of all sums distributed and that the separate entity of the corporation might be disregarded, and that, when he distributed the funds of the corporation, one-half thereof became subject to a constructive trust for the benefit of the estate. The learned surrogate then referred to the rights of creditors and said that their rights were involved as well as those of stockholders, and that, while their extent was not proven, they were asserted to exist and that the amount distributed by Frank which should have gone to creditors cannot be charged with the trust; that whatever amount was distributed from the assets of the corporations by the means adopted in excess of the amount due creditors must be, to the extent of half thereof, treated as a dividend due and diverted from the estate, and be surcharged against Frank Auditore, and that the amount due creditors of the corporation might be determined upon subsequent hearings.

42

This ruling presents a novel and interesting question. While the Supreme Court judgment directed Frank Auditore to repay these funds to the corporation, he has never done so, and the corporation has never been able to collect that judgment although he has been arrested and incarcerated thereunder. May we not, therefore, for the purpose of this proceeding, treat these funds as still in his hands, and determine that one-half of them belong to the estate, since he and the estate are the only stockholders and the only persons interested in the corporation (aside from the creditors, to which subject I will advert later)? The learned surrogate has treated this fund in Frank Auditore's hands as an informal or irregular dividend or distribution of the corporate assets between the two stockholders, and a theft by him of the estate's share. I can see no real objection to this ruling unless the Supreme Court judgment stands in the way. It is true that the administratrix instituted the action which resulted in this judgment. It was the usual derivative action by a stockholder against an officer to recover corporate funds converted by him to his own use, and was, of course, brought for the benefit of the corporation. Of course, it may at first impression seem somewhat inconsistent to hold that, although she, as a stockholder of the corporation, has secured a judgment in the action directing the return by Frank of these funds to the corporation, she may now assert in this proceeding that one-half of these funds so converted by him belonged to the estate. In other words, it is urged that the administratrix took the position in the Supreme Court action that these were corporate funds and secured a judgment directing their repayment to the corporation, and she cannot, therefore, be heard to say that one-half thereof belonged to the estate, and not to the corporation. But this is an argument based solely upon the corporate form under which this business was conducted and these funds arose. I think we may ignore this corporate form, and find that the estate and Frank individually were in effect the corporation and entitled to a one-half share each of these funds. Treating them, therefore, in this sense, there was a diversion by Frank of the funds of the estate measured by one-half of the amount adjudged to have been diverted by him from the corporation. They actually belonged to the two stockholders, and, when Frank Auditore converted them to his own use, he committed a theft of the estate's share, and both he and his surety on his bond are liable.

The Supreme Court judgment is, of course, binding upon the administratrix upon anything adjudicated therein, but there was no such issue presented in that action as there is in this proceeding.

That judgment determined that these were corporate funds. The decree in this proceeding goes a step further and determines that these corporate funds were in reality, as to one-half thereof, funds of the estate. The administratrix was, I think, obliged to bring the action in the Supreme Court in the form she did. Indeed, it was the only safe method of procedure to recover these funds. She could not have safely taken the hazard of seeking their recovery in any proceeding in the Surrogate's Court, or by any other form of action in the Supreme Court. The Supreme Court action was but a means looking toward the ultimate result — recovery of the estate's share of the funds stolen. That remedy has failed to produce the result sought, but the administratrix is not, in my opinion, without a further remedy through this proceeding. In other words, the two remedies availed of by her are not inconsistent, but are cumulative. The doctrine of election or of estoppel, therefore, does not apply.

But it is contended by the appellants that the surrogate has no jurisdiction to determine this question. The jurisdiction of the Surrogate's Court is, of course, fixed by statute. It possesses no general, equitable jurisdiction. It does, however, possess jurisdiction " to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, * * * as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." (Surrogate's Court Act, § 40, as amd. by Laws of 1924, chap. 100; formerly Code Civ. Proc. § 2510, as revised by Laws of 1914, chap. 443.) Of course, this language means only such equitable jurisdiction as may be incidental to the main proceeding of which the surrogate has jurisdiction. The surrogate would not be authorized to set aside a deed or a mortgage and decree that the property or fund belonged to the estate, because that is a peculiar function of a court of equity. But there is nothing of that sort attempted here. No transfer has been set aside, nor has the surrogate attempted to modify the judgment of the Supreme Court. In my opinion, the surrogate has exercised only the incidental equitable powers authorized by the statute.

Neither *Matter of Schaefer* (65 App. Div. 378; affd., 171 N. Y. 686) nor *Matter of Brown* (78 Misc. 342) is an authority against the decree in this proceeding. It may be noted that both cases were decided before the amendment made to the Code of Civil Procedure in 1914 (Chap. 443), broadening the jurisdiction of the surrogate. So far as they bear upon the question presented here, they hold in effect that the Surrogate's Court had no jurisdiction to determine whether extra compensation or salary was improperly taken by

the executor from the corporation and to decree its payment to the estate; that that question could only be litigated in a stockholder's action in equity in the Supreme Court, and that the fund sought to be recovered did not belong to the estate simply because the estate was a stockholder, and the executor an officer. In the case at bar, however, the stockholder's suit has been brought, and resulted in a judgment in favor of the estate as such stockholder, and, if I am correct in my reasoning, the present proceeding is a cumulative remedy to a Supreme Court action by which the estate may accomplish an effective result — the collection of the estate funds misappropriated by Frank Auditore.

If the theory upon which the learned surrogate has proceeded in the case at bar is sound, the only equitable jurisdiction exercised by him involves funds and property of the estate for which the defaulting administrator is accountable, and this, under section 40 of the Surrogate's Court Act (*supra*), is clearly within his jurisdiction. In other words, the ruling of the learned surrogate that, irrespective of the Supreme Court judgment, the funds and property misappropriated by Frank Auditore are in the nature of a dividend which is in his hands and is being withheld from the estate, is the only exercise of equitable powers by the surrogate, and is clearly incidental to the accounting.

The next question to be considered concerns the creditors of the corporation. It is claimed by the respondents, in substance, that Frank Auditore, dominating the corporation, had power to cause dividends to be declared and was bound to exercise that power for the benefit of the estate, and that, if he failed therein, he could have been compelled to distribute the dividends, citing *Burden* v. *Burden* (159 N. Y. 287, 308). But, so far as material to the question involved in this appeal, that case simply holds in substance that, if it can be shown that the trustees of a corporation are guilty of fraud or bad faith in accumulating a large surplus to the injury of stockholders, a court of equity would doubtless interefere. That Frank Auditore was guilty of fraud and bad faith is practically beyond dispute, but there is no proof in this case that such fraud and bad faith related to the accumulation of any surplus. On the contrary, his fraud and dishonesty consisted in looting the corporation. Before the directors of a corporation can be compelled to declare a dividend from alleged surplus accumulated through fraud and bad faith, such a surplus must be proved to exist. There is no such proof here. The only proof is that Frank Auditore distributed property and funds of the corporation, and it is determined that, although this distribution consisted in converting these funds to his own use, it is to be treated as being a

distribution of profits between himself and the estate, and the conversion of the latter's share. There can be no profits or surplus available for dividends to stockholders until creditors have been paid, and it was incumbent upon the petitioner to show either that there are no creditors, or that they have all been paid, and that there is a surplus after such payment which may be treated in this proceeding as a dividend.

The special guardian, however, asserts that " we are not concerned at all with creditors of any of these corporations," and that " there is no proof that there are any such creditors." The first assertion is, of course, unsound. We are concerned with the claims of creditors of the corporation, and it appears that, at the suggestion of some party to the proceeding, the surrogate has required that the amount recovered from the surety company be deposited by it in the National City Bank, subject to the further order of the court. Although the decree gives no reason for this course, the opinion of the learned surrogate indicates that it is to await proof of creditors of the corporation at a further hearing.

It is of no importance, therefore, to determine whether the burden is on the petitioner to make proof as to creditors of the corporation, or on the appellants. The learned surrogate has required such proof, and neither the petitioner nor the special guardian has appealed from this ruling. What is of importance is that, until these claims of creditors have been ascertained and determined and a surplus shown, the appellant surety company should not have been compelled either to pay anything to the estate or to deposit any sum in the National City Bank under its bond. The inquiry as to creditors in this proceeding can only be to determine whether there is a surplus of corporate funds, since, clearly, the surety company is not answerable to these creditors. The provisions of the decree requiring the present payment by the surety company of the amount recovered under its bond and the deposit thereof in the National City Bank are unwarranted by the proof as it stands at present. Indeed, the proceeding has not yet reached a stage where it is ready for a decree, at least so far as Frank Auditore and the surety are concerned, and none should have been made until it was ascertained whether or not any surplus existed after the claims of creditors of the corporation had been determined.

The only other question material upon this appeal is the contention of the appellant Frank Auditore that but one judgment can be granted against him for the alleged conversion, and that the petitioner, who was plaintiff in the Supreme Court action, is bound by the judgment in that action. This contention involves

the question as to whether this decree together with the Supreme Court judgment is a double recovery. Perhaps it is, but if, as I have already pointed out, the remedies are cumulative, that is no objection. Of course, there can be but one satisfaction. If Frank Auditore pays the estate's claim against him as directed by the decree, there will be no difficulty in his obtaining an equitable adjustment in the Supreme Court action of the judgment there.

The decree should be modified by striking out the provision requiring the payment by the appellants Frank Auditore and the National Surety Company as surety upon his bond, and also the provision directing that the sum so directed to be paid by him and the said surety company be deposited, upon its receipt by the administratrix, in the National City Bank, subject to the further order of the court, and the proceeding remitted to the surrogate of Kings county to ascertain the amount of the claims of creditors of the corporations in question and determine what surplus, if any, would exist if they had been paid from the funds of the corporations misappropriated by Frank Auditore, and if it be determined that any such surplus would exist, to enter a decree directing the payment of one-half thereof to the estate by Frank Auditore and the National Surety Company; and as so modified affirmed, without costs.

RICH, KAPPER and SCUDDER, JJ., concur; LAZANSKY, P. J., dissents upon the ground that the surety of Frank Auditore as administrator of Joseph Auditore, deceased, cannot be held responsible for misappropriation by Frank Auditore of moneys belonging to corporations of which he and Joseph Auditore had been sole stockholders and of which he became the sole stockholder individually and as administrator of Joseph Auditore.

Decree of the Surrogate's Court of Kings county modified by striking out the provision requiring the payment by the appellants Frank Auditore and the National Surety Company as surety upon his bond, and also the provision directing that the sum so directed to be paid by him and the said surety company be deposited, upon its receipt by the administratrix, in the National City Bank, subject to the further order of the court, and the proceeding remitted to the surrogate of Kings county to ascertain the amount of the claims of creditors of the corporations in question and to determine what surplus, if any, would exist if they had been paid from the corporate funds misappropriated by Frank Auditore, and if it be determined that any such surplus would exist, to enter a decree directing the payment of one-half thereof to the estate by Frank Auditore and the National Surety Company; and as so modified affirmed, without costs.